LUMM *v.* SIMPSON

[No. 26,141. Filed February 26, 1935.]

*James H. Blackburn,* for appellant.

*William Espenschied,* and *William Espenschied, Jr.,* for appellee.

FANSLER, C. J.—Appellant brought this action to contest the election of appellee to the office of township trustee at the election held in November, 1930. The contest was tried by the board of commissioners, who rendered judgment in favor of appellee. An appeal was taken to the circuit court. There was a special finding of facts, and judgment for appellee.

The decision of the case rested not upon the merits, but upon the facts brought in issue by appellee's third paragraph of answer, a demurrer to which was overruled. This paragraph of answer alleged that there was no candidate for the office of township trustee on the Republican ticket at the primary election held in May, 1930, and that appellant's name was not placed upon the ballot by petition, as provided in section 7466, Burns' 1926; that section 7475, Burns' 1926, provides no method for filling vacancies for township office by political parties; that appellant's name was certified to the board of election commissioners by the chairman and secretary of the Republicon county central committee, who falsely certified that appellant had been selected by a majority of the committee of the township as Republican candidate for township trustee, pursuant to a rule made by the Republican state committee. Appellee contends that, because of this fact, appellant was not legally designated as a candidate, and that a ballot cast for him was a nullity, and that he was not a candidate who was entitled to be voted for. On this issue the court found the facts alleged to be true, and entered conclusions of law to the effect that, in order for appellant to have his name placed on the ballot as Republican candidate for trustee, under the rule laid down by the Republican state central committee, it was necessary that the county chairman ob-

tain the consent of the township committee, or one member thereof, before he could legally certify appellant's name to the election board; that the consent of none of the members of the township committee was received, and that appellant was not therefore a legal candidate for the office of township trustee, and that the votes cast for appellant were therefore illegal and void. On this conclusion there was judgment dismissing appellant's action. There was no determination of the issue upon the result of the ballots.

The purpose of all election laws is to secure a free and honest expression of the voter's will. Statutes controlling the activities of political parties, party conventions, and primaries, and providing for the manner in which the names of candidates may be put upon the ballots, have for their only purpose the orderly submission of the names of candidates for office to the electors to the end that the electors may know who are candidates and have a free opportunity to vote for their choice, and that the ballots may not be encumbered by the names of those who have no substantial support. The election commissioners are public officers. In an action against them, brought before an election, involving the names of the candidates to be placed on the ballot by them, the statutory provisions referred to are treated as mandatory, and they will be enjoined from placing a name upon the ballot that has not been submitted to them pursuant to the statute, but after the election commissioners have acted and placed a name upon the ballot, and after the election, the provisions of the statute are considered directory only, and the names of candidates will be treated as having been legally placed upon the ballot by the election board "unless an essential element of the election is affected, or there is an express declaration in the statute that the act is essential to a valid election, or

that its omission will render the election void. The purpose of the law and the efforts of the court are to secure to the elector an opportunity to freely and fairly cast his ballot, and to uphold the will of the electorate and prevent disfranchisement. In the absence of fraud, actual or suggested, statutes will be liberally construed to accomplish this purpose." *State ex rel. Harry* v. *Ice* (1934), *ante* 65, 191 N. E. 155; *Jones* v. *State ex rel. Wilson* (1899), 153 Ind. 440, 55 N. E. 229; *Blue* v. *Allee* (1916), 184 Ind. 302, 111 N. E. 185.

There was no finding of fraud, nor does it appear that any essential element of the election was affected. The electors apparently had an opportunity to freely and fairly cast their ballots. To disfranchise them because of a mere irregularity, or a mistaken construction of the law by a party committee or election commissioner, would defeat the very purpose of all election laws. The court erred in its conclusion. The cause should have been decided upon the merits. There were special findings in which the court described various ballots, without finding the ultimate fact as to whether they were legally marked according to the statute, or contained identifying marks. The evidence concerning the ballots is all documentary. The only controversy between the parties concerning these ballots concerns facts appearing on the face of the ballots. The original ballots are in the record. Upon such a record it is within the jurisdiction of this court to weigh the evidence and direct such a judgment or decree as may be proper. Section 723, Burns 1926; *State ex rel. Davis* v. *Board, etc.* (1905), 165 Ind. 262, 74 N. E. 1091.

By stipulation and admission in the brief, appellant concedes to appellee a total of 125 legal ballots. It is conceded that appellant has 108 legal ballots. The only one of appellee's ballots which seems to be in controversy is Exhibit 267. This ballot

has a cross in the circle at the head of the Democratic column, and a cross in the square in front of the name of appellee, and the candidate for assessor. This is an illegal ballot and should not be counted.

Appellee contends that 22 ballots marked for appellant are illegal. Appellant concedes two of these to be illegal, which leaves 20 ballots in controversy. The objection to exhibits numbered 227, 230, 232, 233, 250, and 264 is that the crosses in the circle or square extend across the line and outside of the circle or square. This is not a distinguishing mark and does not invalidate the ballots.

The objection to exhibit 226 is that it bears a faint trace of pencil mark near the left side of the ballot. We have examined the ballot; it is a very faint, irregular line, and seems to have been accidental. It is not a distinguishing mark. The ballot is valid.

He contends that one of the marks in one of the squares in Exhibit 236 is not a cross, but merely a straight line with another line coming to that line. We have examined the ballot, and the lines cross. It is a valid ballot.

Exhibit 237 is objected to on the ground that one of the members of one of the crosses is made with two lines. We have examined the ballot. One of the lines was retraced and is left open at one end. This is not a distinguishing mark, and the ballot is valid.

The objection to exhibit 239 is that the mark in the square opposite the name of appellant is not a cross. The lines do cross, and it is a valid ballot.

It is contended that the mark in front of the name of appellant on exhibit 246 is not a cross, but it is; one of the lines being wavy and irregular. This is a valid ballot. It is also contended that some of the

crosses on this ballot extend outside the square, which they do, but this does not invalidate it.

It is contended that the mark in the circle in exhibit 255 is not a cross, but it clearly is although one of the legs is shorter than the other. The ballot is valid.

No reason is suggested why exhibits 245, 257, 258, 260, 261, 262, 263, and 265 are invalid. We have ex-amined the ballot and they are regularly marked, the crosses being made more correctly and neatly than on the average ballot. These ballots are valid.

For a discussion of what will constitute a distinguishing mark and invalidate a ballot, see *Conley* v. *Hile* (1934), *ante* 488, 193 N. E. 95.

These twenty valid ballots, together with the 108 concededly good ballots for appellant, give appellant a total of 128 votes against 125, which are all of the ballots claimed for appellee. Therefore, appellant was legally elected.

Judgment reversed, with instructions to enter judgment for appellant.