J. Bradley **KING** and Kristi Robertson, in their official Governmental capacities as Co-directors of the Indiana Election Division, an agency of the State of Indiana, and Matthew R. Meagher, in his capacity as Chairman of the Cass County Democratic Central Committee, Appellants–Respondents,

v.

Leo T. **BURNS**, Scott Kraud, and John R. Davis, Appellees–Petitioners.

No. 09A02–0610–CV–847.

Court of Appeals of Indiana.

Jan. 31, 2007.

---

Steve Carter, Attorney General of Indiana, Elizabeth Rogers, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellants.

James H. Austen, Starr Austen Tribbett Myers & Miller, Courtney B. Justice, Lo-

gansport, IN, Karl L. Mulvaney, Nana Quay–Smith, Kent D. Zepick, Bingham McHale, LLP, Indianapolis, IN, Attorneys for Appellee, Leo T. Burns.

## OPINION

BARNES, Judge.

### Case Summary

The Indiana Election Division ("the Division") appeals the trial court's grant of a permanent injunction requiring it to certify Leo Burns as a candidate for the office of judge of the Cass County Circuit Court in the November 7, 2006 general election. We affirm.

### Issue

The sole issue we need to address is whether it is appropriate at this time to reverse the granting of the injunction, after Burns has already won the election.

### Facts

The undisputed facts of this case reveal that no Democrat ran in the May 2006 primary to fill the office of judge of the Cass County Circuit Court. On May 10, 2006, Matthew Meagher, chairman of the Cass County Democratic Party Central Committee, announced a caucus to be held on May 23, 2006, to fill candidate vacancies on the 2006 general election ballot, including for the Cass Circuit Court judgeship. On May 12, Burns filed a "Statement of Economic Interest" with the Indiana Commission on Judicial Qualifications. Ex. 2. On May 14, Burns publicly announced his intention to run as the Democratic candidate for the Cass Circuit Court judgeship. On May 18, Burns filed with the Division a form entitled, "Declaration of Candidacy and Written Consent to Fill a Ballot Vacancy." Ex. 4. At the May 23 Democratic

caucus, Burns officially was selected as the Party's candidate for the Cass Circuit Court judgeship. Burns meets all of the requirements to be a circuit court judge pursuant to Indiana Code Section 3–8–1–16.

On May 24, Meagher filed with the Cass Circuit Court clerk a form entitled, "Certificate of Candidate Selection to Fill an Early Ballot Vacancy for a Local Office," which also is known as a "CAN–29" form. Ex. 5. The form named Burns as the Democratic Party candidate for the Cass Circuit Court judgeship. However, Indiana Code Section 3–13–1–15(b) requires such a form to be filed with the Division for the office of circuit court judge. The clerk did not alert Meagher to his error or forward the form to the Division. The deadline for filing the CAN–29 form was July 3, 2006.

Burns actively campaigned for election after the announcement of his candidacy. However, on August 7, 2006, he discovered that he was not listed as a candidate on the Indiana Secretary of State's website and he called the Division to find out why. On August 8, the Division informed Burns that it had not certified him as a candidate because it had not timely received a CAN–29 form designating him as a candidate. On September 8, 2006, after the Division refused to reconsider not certifying Burns as a candidate, he and two Cass County registered voters [1] filed a complaint with the trial court, seeking an injunction requiring the Division to certify Burns as a candidate. On September 22, 2006, the trial court entered a permanent injunction requiring the Division to certify Burns as a candidate.

On September 26, 2006, the Division filed its notice of appeal and moved for a

---

1. One of these voters, Scott Kraud, is a Republican; the other, John Davis, is a Democrat.

stay of the injunction.[2] The trial court denied the motion for a stay, and this court did so as well. When the Division initiated this appeal, we agreed to expedite consideration of the appeal and established a briefing schedule that required a reply brief to be filed no later than October 27, 2006. However, because of delays caused by the Division's request to file an amended opening brief, plus a procedural error in the filing of its reply brief, we did not receive a proper reply brief, and, therefore, briefing was not completed until November 14, 2006. Additionally, the Division did not seek immediate consideration of this appeal by our supreme court under Indiana Appellate Rule 56(A)—i.e., it did not allege "that the appeal involves a substantial question of law of great importance and that an emergency exists requiring a speedy determination." In the meantime, on November 7, 2006, the voters of Cass County elected Burns judge of the Cass County Circuit Court, choosing him over his Republican rival.

### Analysis

Indiana Code Section 3–13–1–15 governs the procedure for a party to fill a candidate vacancy on the general election ballot. Under subsection (a), a party representative must file a certificate prescribed by the Division, the CAN–29 form, providing the chosen candidate's name and address. Subsection (b) of the statute states:

The certificate shall be filed with:

(1) the election division for:

(A) a committee acting under section 3, 4, 5, or 6(b) of this chapter; or

(B) a committee acting under section 6(a) of this chapter to fill a candidate vacancy in the office of judge of a circuit, superior, probate, county, or small claims court or prosecuting attorney; or

(2) the circuit court clerk, for a committee acting under section 6(a) of this chapter to fill a candidate vacancy for a local office not described in subdivision (1).

Subsection (c) of the statute provides that the certificate must be filed by July 3 preceding the general election in order to fill a candidate vacancy resulting from there being no candidate chosen at the primary election. Newly-enacted Indiana Code Section 3–5–4–1.9, effective March 24, 2006, prohibits the Division from accepting late filings for any reason, except as expressly provided by statute.

It is undisputed that Meagher did not comply with the letter of these statutes when he filed the CAN–29 form for Burns's circuit court judge candidacy with the Cass County clerk. Clearly, it was supposed to be filed with the Division no later than July 3, 2006. Burns advances several arguments as to why strict, literal compliance with Indiana Code Section 3–13–1–15 was unnecessary in this case, ranging from an assertion that there was substantial compliance with the statute sufficient to fulfill its purpose to claims that the filing with the clerk should have constituted effective filing with the Division because of theories of bailment and/or agency. The Division refutes these arguments.

■ At this point in the litigation, we find it unnecessary to debate or resolve the correctness of the trial court's ruling on the grounds argued by the parties. Because of delays caused by the Division, this case now comes before us for decision in a posture markedly different than when we agreed to expedite consideration of the

---

2. Meagher also is a nominal appellant in this appeal. However, this court granted Meagher's motion to join the brief of the appellees Burns, Kraud, and Davis.

appeal. Burns was in fact listed as a candidate on the November 7 general election ballot in Cass County, and he was duly elected on that date. We have not been informed that a postelection contest of that result is pending.

■■■ Indiana courts are highly reluctant to overturn the results of an election because of alleged procedural irregularities. As our supreme court explained some time ago:

The purpose of all election laws is to secure a free and honest expression of the voter's will. Statutes controlling the activities of political parties, party conventions, and primaries, and providing for the manner in which the names of candidates may be put upon the ballots, have for their only purpose the orderly submission of the names of candidates for office to the electors to the end that the electors may know who are candidates and have a free opportunity to vote for their choice, and that the ballots may not be incumbered by the names of those who have no substantial support. The election commissioners are public officers. In an action against them, brought before an election, involving the names of the candidates to be placed on the ballot by them, the statutory provisions referred to are treated as mandatory, and they will be enjoined from placing a name upon the ballot that has not been submitted to them pursuant to the statute, but, after the election commissioners have acted and placed a name upon the ballot, and after the election, the provisions of the statute are considered directory only, and the names of candidates will be treated as having been legally placed upon the ballot by the election board, "unless an essential element of the election is affected, or there is an express declaration in the statute that the act is essential to

a valid election, or that its omission will render the election void. The purpose of the law and the efforts of the court are to secure to the elector an opportunity to freely and fairly cast his ballot, and to uphold the will of the electorate and prevent disfranchisement. In the absence of fraud, actual or suggested, statutes will be liberally construed to accomplish this purpose."

*Lumm v. Simpson,* 207 Ind. 680, 683–84, 194 N.E. 341, 342 (1935) (quoting *State ex rel. Harry v. Ice,* 207 Ind. 65, 71, 191 N.E. 155, 157 (1934)). "This must be treated as the settled law of this state." *Roeschlein v. Thomas,* 258 Ind. 16, 33 n. 6, 280 N.E.2d 581, 591 n. 6 (1972). To disenfranchise voters after an election "because of a mere irregularity or a mistaken construction of the law by a party committee or election commissioner would defeat the very purpose of all election laws." *Lumm,* 207 Ind. at 684, 194 N.E. at 342.

■■ There is no allegation here of any fraud in Burns's candidacy or in the November 7 general election, nor any assertion or evidence that he failed to comply with every statute governing elections and qualifications for a circuit court judge, save one. However, nothing in Indiana Code Section 3–13–1–15 expressly states that a failure to strictly comply with it voids the result of an election or that the place of filing of the CAN–29 form is an essential element of an election. Instead, it is apparent that the statute's primary purpose is to provide a means for orderly and timely preparation of ballots for a general election. Once the ballots are in fact prepared and an election is held using those ballots, it would defeat the purpose of elections laws generally to overturn the results of the election and disenfranchise the voters who used the ballots.

■■ Burns clearly was the Democratic Party's chosen candidate for Cass County

Circuit Court judge. That choice was communicated accurately to Cass County voters. They elected Burns to office. He is qualified to hold that office. The "eminently practical doctrine" formally know as "'de minimis non curat lex' ... proclaims that the law does not redress trifles." *D & M Healthcare, Inc. v. Kernan,* 800 N.E.2d 898, 900 (Ind.2003). "[I]t is the courts' way of saying 'So what?'" *Id.* If there is no "what" and no practical consequences flowing from the technical violation of some law, the courts do not provide relief to ordinary litigants. Id. At this point, the Division can point to no practical consequences of Burns's CAN–29 form having been filed with the Cass County clerk rather than the Division. Under the holdings of cases such as *Lumm* and *Roeschlein,* as well as the general doctrine of "de minimis non curat lex," we decline to reverse the trial court's granting of the permanent injunction requiring Burns' placement on the ballot, the effect of which would be also to reverse the results of the November 7, 2006 general election.

### Conclusion

We decline to disenfranchise the voters of Cass County by overturning their decision that Burns should be their circuit court judge, based on a technical violation of a law that had no practical effect on the validity of the November 7, 2006 general election. We affirm.

Affirmed.

BAILEY, J., and VAIDIK, J., concur.