This is a statutory quo warranto action brought by the State of Alabama on the relation of John Allie James challenging the qualifications of Thomas Reed to hold office as a member of the Alabama House of *Page 305 
Representatives. The Circuit Court of Montgomery County granted a motion for summary judgment, holding that the judiciary has no authority to determine the qualifications of a member of the Alabama Legislature. We reverse.
The relator is a resident and registered voter of Alabama House District 67. In the general election of 1974, Thomas Reed was elected as the representative from this district and has served continuously since that time.
On July 22, 1977, Reed was convicted in the Circuit Court of Montgomery County of attempted bribery, a misdemeanor, and fined $500.00. The relator contends that the crime for which Reed was convicted is an infamous crime involving moral turpitude, and that the conviction renders him ineligible to hold office under § 60 of the Alabama Constitution, 1901.
It is Reed's position that the Alabama Constitution vests the exclusive power to judge the qualifications of legislators in each respective house of the Legislature, and that therefore his eligibility is not a proper subject for judicial review.
As a preliminary matter, we note that if this matter is justiciable, then quo warranto is the appropriate remedy. It is well established that the remedy lies to challenge a person's right to hold office based on grounds of ineligibility. Stateex rel. Moore v. Blake, 225 Ala. 124, 142 So. 418 (1932); Stateex rel. Coe v. Harrison, 217 Ala. 80, 114 So. 905 (1927); Stonev. State ex rel. Freeland, 213 Ala. 130, 104 So. 894 (1925). As it was stated by this Court in State ex rel. Moore v. Blake,supra.
 "If the incumbent becomes ineligible to hold the office pending his incumbency, and continues to exercise its functions, he is a usurper, and may be ousted by quo warranto proceedings. Such is the definite decision in State ex rel. Coe v. Harrison, 217 Ala. 80, 114 So. 905. See, also State ex rel. Williams v. Owens, 217 Ala. 668, 117 So. 298." 225 Ala. at 126, 142 So. at 419.
It is undisputed that a conviction for an infamous crime goes to the eligibility of Reed to hold office as a member of the Alabama Legislature. § 60, Constitution of Alabama, 1901.
The propriety of the quo warranto procedure is not the central issue here; rather, the question is whether any judicial remedy is available to challenge Reed's eligibility. Since Reed is a member of the Legislature, if authority to pass on the question of his eligibility is vested exclusively in the House of Representatives, this issue is a "political question" which is barred from judicial resolution by the doctrine of separation of powers. § 42, § 43, Constitution of Alabama, 1901.
The judiciary has traditionally refrained from deciding political questions. State ex rel. Attorney General v. Porter,1 Ala. 688 (1840); Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691,7 L.Ed.2d 663 (1962). In Baker v. Carr, supra, the Court stated that a political question incapable of judicial resolution is presented when there is one of the following factors:
 ". . . a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question." 369 U.S. at 217, 82 S.Ct. at 710
Reed's main contention is that § 51 and § 53 of the Alabama Constitution constitute a textually demonstrable constitutional *Page 306 
commitment of the issue to the Legislature.[1] We disagree.
Section 60 of the Alabama Constitution provides that:
 "No person convicted of embezzlement of the public money, bribery, perjury, or other infamous crime, shall be eligible to the legislature, or capable of holding any office of trust or profit in this state."
We are clear that this section is a specific constitutional limitation on legislative authority, and judicial enforcement of its mandate does not derogate the principle of separation of powers. Speaking of § 60, this Court has stated:
 "That section has the force of positive law declaring a fixed policy that persons therein named are ineligible to hold office in Alabama. The peace and dignity of the state as dependent upon the character and morale of her public officials is the thought behind it.
 The Legislature has no power, unless elsewhere provided in the Constitution, to make convicted felons of the class named eligible to office. To that extent section 60 is a limitation on legislative power." State ex rel. Moore v. Blake, supra, 225 Ala., at 126, 142 So. at 419.
Ruling against a similar claim that the suit involved a political question committed to the Legislative branch, this Court in State ex rel. Attorney General v. Porter, supra, sustained the power of the judiciary to entertain a quowarranto suit challenging the constitutional qualifications of a judge to hold office. The facts in Porter involved a challenge to the right of a member of the Legislature to resign a legislative seat and accept a newly-created judgeship. There was a constitutional proscription against any member of the legislature taking any position which was created during his legislative term. The respondent maintained that since the legislature had exclusive power to elect judges, the legislature's election was conclusive as to the qualifications of anyone they elected. This court did not agree with that proposition. In the course of overruling State ex rel. AttorneyGeneral v. Paul, 5 Stew. P. 40 (Ala. 1833), the Court inPorter made the following comments:
 "The tendency of this argument is to prove, that each department of the government is supreme, as to the powers and duties confided to it. — That the two houses of the General Assembly, being charged with the duty of electing judges, are impliedly vested with the authority to examine, and definitely determine upon the qualification of those they may elect. Such a conclusion cannot be tolerated. That there may be acts of either one, or all of the branches of the Legislature united, which cannot be drawn in question before the judiciary, will not be denied. Thus either house may elect its own officers, and the choice cannot be questioned; nor can the exercise of a mere political duty by the Legislature, or either of its branches be in any manner controlled. But that the election of a judge by joint vote of the two houses, is of a character so conclusive, as to forbid an examination into the right of the appointee to the office, cannot be admitted."
* * * * * *
 "In the case of the State ex rel. c.c. Paul, the court seem [sic] to have considered, that the constitution in conferring upon the two houses of the General Assembly, the right to elect the chancellors and judges, impliedly invest [sic] them with entire and exclusive authority, over the subject; and thus negative any interference with their choice. This *Page 307 
conclusion could only have been attained by a misapplication of the maxim expressio unius exclusio est alterius. It is true, that the grant of power to the two houses to elect, is equivalent to an express denial of it to any other branch of government, exeept [sic], so far as the authority to appoint, in the event of a vacancy, is conferred upon the governor. But after an election has been made, according to the forms of the constitution there is no inhibition, either express or implied, upon the judiciary, which will prevent that department from inquiring, whether in the choice made, some feature of that instrument has not been violated, or an office conferred upon one, who was not eligible to its enjoyment. The opposite conclusion, if carried out to its legitimate result, would place the legislative above the judicial department, instead of making both co-workers in their appropriate spheres, in the machinery of government." 1 Ala. at 697-699
Likewise, under these facts, to construe § 51 and § 53 as vesting in each house of the Legislature exclusive authority on this issue, removing it from judicial cognizance, would deprive § 60 of its proper field of operation.
The legislative power to judge the qualifications of its members and to expel them is not restricted to considerations of criminal misconduct. The legislative power to judge the constitutional qualifications of age, citizenship, and residency (§ 47, Constitution of Alabama, 1901) is exclusive under § 51.[2] Buskey v. Amos, 294 Ala. 1, 310 So.2d 468 (1975). The legislative power under § 53 to expel a member by a two-thirds vote is seemingly unrestricted.[3]
However, the legislative power under these sections does not operate to the exclusion of the positive force of § 60, a specific constitutional limitation upon the ability of any
person to hold public office in this State. This section embodies the policy that a person proven not to be of good moral character, through conviction of an infamous crime, may not hold public office.
This court faced a similar question concerning the proper field of operation of § 60 as it applies to public officials who may be removed from office by impeachment, and it has continually rejected the contention that merely because an official may be impeached, § 60 has no application. In State exrel. Chambers v. Bates, 233 Ala. 251, 171 So. 370 (1936), the Court stated:
 "There has been much discussion of the circumstances which will support a contest, an impeachment proceeding, and a quo warranto when the claim relates to some disqualification of the officeholder, or cause for his removal. We will refer to those cases here applicable."
* * * * * *
 "In State ex rel. Moore v. Blake, 225 Ala. 124, 142 So. 418, this court again considered the question. It was a quo warranto proceeding, and sought to oust a county officer because of his conviction in a federal court and sentenced [sic] to the penitentiary. The court referred to section 60 of the Constitution, which makes a person convicted of such a crime incapable of holding any office of trust or profit in this state, and also referred to section 2699, Code, vacating the office upon such a conviction. Stone v. State ex rel. Freeland, 213 Ala. 130, 104 So. 894. He may be impeached and removed from office for no other act or omission except such as is named in section 173, but he may be removed by quo warranto on *Page 308 account of the circumstances named in section 60, supra, which make him incapable of holding such an office, though they occur while he is in office, or for any other cause which renders him incapable of holding the office. State ex rel. Coe v. Harrison, 217 Ala. 80, 114 So. 905." (Emphasis supplied.) 233 Ala. at 254, 171 So. at 372.
See also, State ex rel. McIntyre v. McEachern, 231 Ala. 609,166 So. 36.
The power of the Legislature to remove one of its members for criminal misconduct is analogous to the power of impeachment. It is merely cumulative and supplements § 60 when the facts are within the section's field of operation. The principles of § 60 apply without regard to the office the person may occupy.
We hold that § 51 and § 53 do not demonstrate a constitutional commitment of this issue to the Legislative branch to the exclusion of judicial action to enforce § 60 through quo warranto. The issue is a proper subject of judicial resolution.
Reed's reliance on language from Buskey v. Amos, supra;Alabama State Bar ex rel. Steiner v. Moore, 282 Ala. 562,213 So.2d 404 (1968); and In re Opinion of the Justices, 254 Ala. 160, 47 So.2d 586 (1950), is inapposite for the reason that none of these cases involved a criminal conviction which brought into play the constitutional disqualification provision of § 60.
The judgment of the lower court is hereby reversed and the cause is remanded.
REVERSED AND REMANDED.
All the Justices concur, except TORBERT, C.J., not sitting.
[1] Section 51 provides, in part:
"Each house shall choose its own officers and shall judge of the election, returns, and qualifications of its members."
Section 53 provides:
"Each house shall have power to determine the rules of its proceedings and to punish its members and other persons, for contempt or disorderly behavior in its presence; to enforce obedience to its processes; to protect its members against violence, or offers of bribes or corrupt solicitation; and with the concurrence of two-thirds of the house, to expel a member, but not a second time for the same offense; and the two houses shall have all the powers necessary for the legislature of a free state."
[2] Powell v. McCormack, 395 U.S. 486, 89 S.Ct. 1944,23 L.Ed.2d 491 (1969) held that the power of the United States House of Representatives under Art. I, § 5 to judge the qualifications of its members was limited to consideration of constitutional
qualifications. Our decision in the case at bar does not require us to so interpret § 51 of the Alabama Constitution and we reserve judgment on that issue.
[3] However, the legislature must afford a member the minimum procedural due process requirements of the federal constitution — McCarley v. Sanders, 309 F. Supp. 8 (M.D.Ala., 1970) — and a member cannot be expelled for reasons which violate the First Amendment. Bond v. Floyd, 385 U.S. 116, 87 S.Ct. 339,17 L.Ed.2d 235 (1966).