ATTORNEYS FOR APPELLANT
Gregory F. Zoeller
Attorney General of Indiana

Thomas M. Fisher
Solicitor General

Stephen R. Creason
Chief Counsel

Ashley Tatman Harwel
Heather Hagan McVeigh
Kathy Bradley
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Mark E. GiaQuinta
Holly A. Brady
Lindsey C. Swanson
Andrew L. Teel
Haller & Colvin, P.C.
Fort Wayne, Indiana

George M. Plews
Peter M. Racher
Plews Shadley Racher & Braun LLP
Indianapolis, Indiana



FILED
Jun 18 2013, 9:46 am
CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 49S00-1201-PL-53

TIM BERRY, AUDITOR OF STATE;
M. CAROLINE SPOTTS, PRINCIPAL CLERK OF THE HOUSE OF REPRESENTATIVES; AND
THE STATE OF INDIANA,                                        *Appellants (Defendants),*

v.

WILLIAM CRAWFORD, ET AL,                                     *Appellees (Plaintiffs).*

No. 49S00-1202-PL-76

TIM BERRY, AUDITOR OF STATE;
BRIAN C. BOSMA, SPEAKER OF THE INDIANA HOUSE OF REPRESENTATIVES;
M. CAROLINE SPOTTS, PRINCIPAL CLERK OF THE HOUSE OF REPRESENTATIVES; AND
THE STATE OF INDIANA,                                        *Appellants (Defendants),*

v.

WILLIAM CRAWFORD, ET AL,                                     *Appellees (Plaintiffs).*

Consolidated Appeals from the Marion Superior Court,
No. 49D10-1106-PL-23491
The Honorable David J. Dreyer, Judge

**June 18, 2013**

**Dickson, Chief Justice.**

With this case we confront whether the judicial branch may, consistent with the Indiana Constitution, review actions of and intervene in the internal management of the legislative branch, specifically the decision of the House of Representatives to collect fines from House members who left the state to prevent the formation of a quorum. We hold that when, as here, the Indiana Constitution expressly assigns certain functions to the legislative branch without any contrary constitutional qualification or limitation, challenges to the exercise of such legislative powers are nonjusticiable and the doctrine of separation of powers precludes judicial consideration of the claims for relief, and the defendants' request for dismissal of the plaintiffs' claims should have been granted in full.

During the 2011 legislative session, members of the Indiana House of Representatives Democratic Caucus left the House Chambers and the state to prevent the formation of a quorum in order to block a vote on impending legislation. Members of the House Republican Caucus imposed, by motion, fines on the absent legislators. The Speaker of the House, Brian Bosma, then directed the Principal Clerk, M. Caroline Spotts, to submit payroll grids to the Auditor of State, Tim Berry, withholding the fines from legislative pay. The plaintiffs, affected members of the House Democratic Caucus, brought suit in Marion Superior Court seeking to recover the withheld pay and enjoin future action to recover the fines.

On December 6, 2011, the trial court granted the defendants' motion to dismiss in part, finding that the determination of the fine was within the House's "exclusive constitutional authority" and thus outside the court's jurisdiction, but denied it in part, finding that review of the collection of fines was within the court's jurisdiction. The trial court then certified its order for interlocutory appeal and stayed the case pending that appeal ("Berry I").

During the 2012 legislative session, members of the House Democratic Caucus again absented themselves from the House Chambers in order to block a vote on impending legislation. House Republicans again passed motions to compel and fine the absent members. The trial court then lifted its stay to allow amendment of the plaintiffs' complaint to add additional House Democrats as plaintiffs. On January 27, 2012, the trial court held a hearing on the plaintiffs' motion for preliminary injunction.

On February 6, 2012, the trial court consolidated the trial on the merits with the previous hearing on the motion for preliminary injunction and entered final judgment for the plaintiffs ("Berry II"). The court ordered return of the withheld amounts and issued a permanent injunction preventing future withholding, finding that the seizure of the members' pay in satisfaction of the legislative fines violated the Indiana Wage Payment Statutes. The defendants appeal both the December 6, 2011, denial of the defendants' motion to dismiss, Berry I, and the February 6, 2012, final judgment, Berry II, which have been consolidated by this Court into one appeal.[1]

In granting the defendants' motion to dismiss in part, the trial court found that it could not "interfere with the House's 'exclusive constitutional authority' to compel attendance or determine a fine, even if it violates [statutory law] when doing so." Appellants' App'x at 7. We agree. For courts to get involved in such a legislative function would amount to the type of "constitutionally impermissible judicial interference with the internal operations of the legislative branch" which we have rejected in the past. State ex rel. Masariu v. Marion Superior Ct. No. 1, 621 N.E.2d 1097, 1098 (Ind. 1993). Yet, in denying the motion with regard to review of the collection of the legislative fines, the trial court found that "the House's 'exclusive constitutional authority' to compel attendance does not preclude Indiana courts from otherwise interpreting and enforcing applicable Indiana statutes—which is the courts' 'exclusive constitutional authority.'" Appellants' App'x at 8. Thus, the trial court concluded, it was not precluded from deciding plaintiffs' Indiana wage claims and Indiana constitutional claims relating to the collection of the fines. This is incorrect.

---

[1] The plaintiffs have not cross-appealed the trial court's grant of the defendants' motion to dismiss as to the imposition of the fines. Thus, that issue is not before the Court.

The standard of review for a trial court's grant or denial of a 12(B)(1) motion to dismiss for lack of subject matter jurisdiction is "a function of what occurred in the trial court." GKN Co. v. Magness, 744 N.E.2d 397, 401 (Ind. 2001). Where the facts before the trial court are not in dispute, the question of subject matter jurisdiction is one of law and we review the trial court's ruling *de novo*. *Id.* Likewise, when reviewing a final judgment, we review all conclusions of law *de novo*. Ind. Dep't of Ins. v. Everhart, 960 N.E.2d 129, 133 (Ind. 2012). Therefore, because the facts here are not in dispute, we review the trial court's judgment *de novo*.

The defendants assert that "[t]he Indiana Constitution commits legislative discipline exclusively to the respective houses of the General Assembly, and discipline of members is not subject to judicial review." Appellants' Br. at 15–16. In support, the defendants cite various provisions of Article 4 of the Indiana Constitution, which delineate the powers of the legislative department. Article 4, Section 10, states, in relevant part, "Each House, when assembled, shall choose its own officers . . . ; judge the elections, qualifications, and returns of its own members; determine its rules of proceeding, and sit upon its own adjournment." Ind. Const. art. 4, § 10. The defendants also rely on Article 4, Section 11,

> Two-thirds of each House shall constitute a quorum to do business; but a smaller number may meet, adjourn from day to day, and *compel the attendance of absent members*. A quorum being in attendance, if either House fail to effect an organization within the first five days thereafter, the members of the House so failing, shall be entitled to no compensation, from the end of the said five days until an organization shall have been effected.

*Id.* art. 4, § 11 (emphasis added). Finally, the defendants cite Article 4, Section 14, relating to discipline of members: "Either House *may punish its members for disorderly behavior*, and may, with the concurrence of two-thirds, expel a member; but not a second time for the same cause." *Id.* art. 4, § 14 (emphasis added). Therefore, the defendants argue, the trial court, in reviewing the plaintiffs' claims and entering final judgment for the plaintiffs, acted in violation of the principles of separation of powers decreed by the Indiana Constitution.

The separation of powers doctrine is embodied in Article 3, Section 1, of the Indiana Constitution, which states,

> The powers of the Government are divided into three separate departments; the Legislative, the Executive including the Administrative, and the Judicial: and no person, charged with official duties under one of these departments, shall exercise any of the functions of another, except as in this Constitution expressly provided.

4

*Id.* art. 3, § 1. The separation of powers doctrine prevents the courts from reviewing political, social, and economic actions within the exclusive province of coordinate branches of government. Peavler v. Bd. of Comm'rs of Monroe Cnty., 528 N.E.2d 40, 44 (Ind. 1988). The purpose of this doctrine is "to rid each separate department of government from any influence or control by the other department." A.B. v. State, 949 N.E.2d 1204, 1212 (Ind. 2011) (citing State ex rel. Black v. Burch, 226 Ind. 445, 463, 80 N.E.2d 294, 302 (1948)), *reh'g denied.* As such,

> Courts should be very careful not to invade the authority of the legislature. Nor should anxiety to maintain the constitution, laudable as that must ever be esteemed, lessen their caution in that particular; for if they overstep the authority which belongs to them, and assume that which pertains to the legislature, they violate the very constitution which they thereby seek to preserve and maintain.

State ex rel. Bd. of Comm'rs of Benton Cnty. v. Boice, 140 Ind. 506, 514, 40 N.E. 113, 113 (1895) (quoting Evans v. Browne, 30 Ind. 514, 523 (1869)).

While the Constitution of the United States implicitly mandates the separation of powers at the federal level, *see* Buckley v. Valeo, 424 U.S. 1, 124, 96 S. Ct. 612, 684–85, 46 L. Ed. 2d 659, 747–48 (1976), the constitutions of Indiana and many other states clearly and explicitly command that each branch of state government respect the constitutional boundaries of the coordinate branches. *See, e.g.*, Ala. Const. art. III, § 43; Ga. Const. art. I, § 2, ¶ III; Iowa Const. art. III, § 1; Ky. Const. § 27; Mass. Const. pt. 1, art. XXX; Mont. Const. art. III, § 1; Nev. Const. art. III, § 1; N.H. Const. pt. 1, art. 37; N.C. Const. art. I, § 6.

One such state with a similar separation of powers provision explicitly detailed in its constitution is Alabama. Article III, Section 43, of the Alabama Constitution states,

> In the government of this state, except in the instances in this Constitution hereinafter expressly directed or permitted, the legislative department shall never exercise the executive and judicial powers, or either of them; the executive shall never exercise the legislative and judicial powers, or either of them; the judicial shall never exercise the legislative and executive powers, or either of them; to the end that it may be a government of laws and not of men.

Ala. Const. art. III, § 43. The Supreme Court of Alabama has, on several occasions, examined the interplay of the separation of powers doctrine and judicial review of legislative action. We find two such cases helpful in our analysis.

5

First, in State ex rel. James v. Reed, 364 So. 2d 303 (Ala. 1978), a registered voter brought an action challenging the qualifications of a member of the Alabama House of Representatives and seeking his removal from office due to that member's conviction of attempted bribery after taking office. *Id.* at 304–05. The trial court granted a motion for summary judgment in favor of the defendant, holding that the judiciary had no authority to investigate the qualifications of a member of the legislature. *Id.* at 305. On appeal by the relator, the defendant's position was that "the Alabama Constitution vests the exclusive power to judge the qualifications of legislators in each respective house of the Legislature, and that therefore his eligibility is not a proper subject for judicial review." *Id.* He argued that Article IV, Sections 51 and 53 of the Alabama Constitution "constitute a textually demonstrable constitutional commitment of the issue to the Legislature." *Id.* at 305–06. The Alabama Supreme Court reversed, holding that a separate provision, Article IV, Section 60, which prohibits any person convicted of embezzlement, bribery, perjury or "other infamous crimes" from serving in the legislature, acted as "a specific constitutional limitation on legislative authority, and judicial enforcement of its mandate does not derogate the principle of separation of powers." *Id.* at 306. Essentially, although judgment of legislative qualifications was a function textually committed to the legislative branch in the constitution, the judiciary was able to enforce *separate constitutional limitations* on legislative qualifications without violating the separation of powers.

Finding the absence of such separate constitutional provision, the Alabama Supreme Court came to the opposite conclusion regarding a related issue in Birmingham-Jefferson Civic Center Authority v. City of Birmingham, 912 So. 2d 204 (Ala. 2005). There, the City of Birmingham and Jefferson County brought an action seeking a declaratory judgment that certain taxation statutes were invalid because they failed to be passed by a majority of a quorum of the House of Representatives, as required by the state constitution. *Id.* at 206–07. The issue before the trial court was whether "a bill must receive the affirmative vote of a majority of a quorum, or . . . only the affirmative vote of a majority of the yea and nay votes cast in the presence of a quorum." *Id.* at 209. The trial court found that the constitution required the former, the affirmative votes of a majority of a quorum, but that only the latter had actually occurred, rendering the acts unconstitutional. On appeal, the Alabama Supreme Court held that the case presented a

6

nonjusticiable political question and that the trial court should have declined to decide the question. *Id.* at 205. In so holding, the court distinguished the case before it from Reed by noting,

> [T]here is no other provision of the Constitution that would be defeated by allowing the legislature the final authority over its internal voting rules and procedures. Because the Alabama Constitution contains no limitation on the manner in which the legislature might interpret the phrase "majority of each house" and because the Constitution clearly grants to the legislature the power to determine the rules of its own proceedings, whether a "majority of each house" has voted in favor of a bill must be decided by the rules established by the legislature. We conclude that there is a textually demonstrable constitutional commitment to the legislature of the question of how to determine what constitutes a "majority of each house . . . voting in [the bill's] favor." Therefore, whether the legislature conducted its internal voting proceedings in compliance with § 63 is a nonjusticiable issue.

*Id.* at 217–18 (alteration in original) (citation omitted). The court further found that the lack of a separate constitutional limitation on a function otherwise textually committed to the legislature revealed a "lack of judicially discoverable and manageable standards for resolving the question presented," *id.* at 219, and that judicial review of the issue "would express a lack of the respect due" to the legislature, *id.* at 221. For each of the three reasons, the court vacated the trial court's judgment and dismissed the appeal.

Similarly, in Commission on Ethics v. Hardy, 212 P.3d 1098 (Nev. 2009) (per curiam), the Nevada Supreme Court considered whether the Nevada Commission on Ethics, an executive agency, had the authority to investigate and discipline a state senator for alleged ethical violations, particularly since the Nevada Constitution conferred the power to discipline members on each house of the legislature. Important in the court's analysis was the fact that the senator's alleged ethical violations related to voting on legislation, a "core legislative function." *Id.* at 1100. The court concluded that,

> to the extent that a legislator's actions are undertaken in the course of the legislator's participation in, or conduct of, a core legislative function, any discipline for purported disorderly conduct in the course of engaging in these core function activities is a function constitutionally committed to each legislative house with regard to its members that cannot be delegated to another branch of government.

*Id.* at 1106.

In deciding the issue before it, the Nevada Supreme Court relied heavily on the Vermont Supreme Court's decision in Brady v. Dean, 790 A.2d 428 (Vt. 2001). There, the Vermont Su-

7

preme Court held that a challenge to the validity of a law based on the argument that certain members of the Vermont House of Representatives should have disqualified themselves from voting on legislation due to conflicts of interest constituted a nonjusticiable political question. *Id.* at 432–33. Essential to the court's determination was the fact that Chapter II, Section 14, of the Vermont Constitution conferred on the legislature the *exclusive* authority to judge the qualifications of its members. *Id.* at 431. The court made clear that this constitutional provision would not work to immunize members from any scrutiny whatsoever by the judicial or executive branches of government, but where the conduct at issue constitutes a "core legislative function" such as voting on legislation, "this Court—as a constitutional and prudential matter—will not scrutinize [it]." *Id.* at 432–33.

Article 7, Section 1, of the Indiana Constitution vests the judicial power of the state in the courts. The circuit courts exercise jurisdiction "as may be prescribed by law," Ind. Const. art. 7, § 8, and the intermediate appellate courts and Supreme Court "shall exercise appellate jurisdiction" as specified by rules promulgated by the Supreme Court, *id.* art. 7, §§ 4, 6. Although jurisdiction is granted to the courts by the Constitution, such jurisdiction is neither absolute nor unlimited. Our cases have repeatedly held that prudential concerns may render a dispute nonjusticiable by the courts. The distinction between jurisdiction and justiciability is a fine one and has been confused in the past. It is necessary here to clearly explain this distinction. Jurisdiction is defined as "[a] court's power to decide a case or issue a decree." Black's Law Dictionary 927 (9th ed. 2009). It is the power in the first instance for a court to exercise authority over and rule on a dispute. Justiciability, on the other hand, is "[t]he quality or state of being appropriate or suitable for adjudication by a court." *Id*. at 943. Accordingly, prudential concerns over the appropriateness of a case for adjudication may preclude the courts from deciding a dispute on the merits.

Traditionally, the justiciability discussion under Indiana law has focused on questions of standing and mootness. *See, e.g.*, <u>City of Indianapolis, ex rel. City-Cnty. Council of Indianapolis & Marion Cnty. v. Ind. State Bd. of Tax Comm'rs</u>, 261 Ind. 635, 637, 308 N.E.2d 868, 869 (1974) (dismissing appeal due to a "fundamental lack of 'justiciability,'" resulting from a lack of standing); <u>State ex rel. Pruitt v. Lake Circuit Court</u>, 245 Ind. 612, 612–14, 201 N.E.2d 332, 332–

33 (1964) (dismissing case involving candidacy for office of county treasurer in primary election because the election date had passed and the issues were therefore moot). However, a separate justiciability concern arises when courts are asked to review internal matters of a coordinate branch of government. In such situations, although the courts have jurisdiction to review the case in the first instance, justiciability concerns stemming from Article 3, Section 1, caution the courts to intervene only where doing so would not upset the balance of the separation of powers. Thus, the decree issued by a court pursuant to its lawful *jurisdiction* may, on occasion, state that, for prudential reasons, the issues in the case at hand are *nonjusticiable*.

Article 4, Section 1, of the Indiana Constitution vests the legislative power in the General Assembly, consisting of the Senate and the House of Representatives. Ind. Const. art. 4, § 1. Article 4, Section 10, directs each house of the legislature to determine its own rules of proceeding. *Id.* art. 4, § 10. Pursuant to this directive, the House of Representatives passes, in every General Assembly, House Rules which serve to govern the internal operations of the House. Here, the plaintiffs' fines were imposed pursuant to two House Rules: Rule 36, which requires members' attendance at legislative session, and Rule 4, which authorizes House leadership to enforce Rule 36 by compelling attendance of members. These rules were unanimously adopted by the House on Organization Day of the 117th General Assembly, and are further justified by provisions in Article 4, Section 11 ("Two-thirds of each House shall constitute a quorum to do business; but a smaller number may meet, adjourn from day to day, and compel the attendance of absent members."), and Article 4, Section 14 ("Either House may punish its members for disorderly behavior . . . ."). Much like the constitutional grant of jurisdiction to the General Assembly over "the elections, qualifications, and returns of its own members," State ex rel. Acker v. Reeves, 229 Ind. 126, 129, 95 N.E.2d 838, 839 (1951), the constitutional grant of jurisdiction to the legislature over its internal proceedings and the discipline of its members is exclusive. Sections 10, 11, and 14 of Article 4 represent an express constitutional commitment to the legislature. Absent any further express constitutional limitation or qualification on this grant of authority, the plaintiffs' claims are nonjusticiable.

Plaintiffs put forth two constitutional bases which they contend support their challenge to the imposition and collection of fines for their nonattendance: Article 4, Section 26, the right to

9

protest, and Article 4, Section 29, the right to compensation for services. However, neither of these provisions provides an express constitutional limitation to the right of each respective house to determine its rules of proceedings, compel the attendance of absent members, and punish its members for disorderly conduct.

Article 4, Section 26, provides, "Any member of either House shall have the right to protest, and to have his protest, with his reasons for dissent, entered on the journal." Ind. Const. art. 4, § 26. Although there is no case law interpreting this provision, plaintiffs provide a historical anecdote recounting the actions of Governor Oliver P. Morton, who led a two-year quorum break "to preserve Indiana's membership in the Union during the Civil War." Appellees' Br. at 24. While there is certainly nothing in our Constitution that prohibited Governor Morton, nor that prohibits plaintiffs, from instituting a quorum break as a form of protest, there is also nothing in our Constitution that states that the nature or form of a member's protest is beyond all reproach by the remaining members. To the contrary, the Constitution provides for a mechanism to compel attendance of absent members and to punish members for disorderly conduct. We find that the right to protest in Section 26 does not constitute an express limitation or qualification on the constitutional grant of legislative power to compel attendance and to punish members.

Article 4, Section 29, states, "The members of the General Assembly shall receive for their services a compensation to be fixed by law; but no increase of compensation shall take effect during the session at which such increase may be made." Ind. Const. art 4, § 29. Plaintiffs claim that this provision creates a property right which invokes the Takings Clause of the Indiana Constitution, *id.* art. 1, § 21, and the Due Process Clause of the United States Constitution, U.S. Const. amend. XIV. Of the two clauses in Section 29, the second clearly does not create a property right but only concerns the timing of increases in legislative compensation. The first clause, while declaring that legislators "shall receive" compensation, conditioned such entitlement "for their services" and only as "fixed by law." The plaintiffs' claims in this case do not implicate the application of Section 29. The imposition and collection of fines alleged in this case did not impinge upon legislative compensation for services, but rather were predicated on the absent legislators' *lack* of services. Furthermore, the fines were imposed pursuant to lawful authority—both the constitutional authority granted to each legislative house to compel attendance and punish

10

members, and the House Rules, which had been unanimously adopted. More importantly, neither of the clauses in Section 29 constitutes an express constitutional limitation or qualification on the exclusive grant of authority to compel the attendance of absent members and to punish its members for disorderly behavior. Ind. const. art. 4, §§ 11, 14.

As longstanding precedent makes clear, "It is settled that the Legislature, if not restrained by some provision of the Constitution, has the power to increase or diminish the compensation of public officers during the term for which they were elected."[2] Board of Comm'rs of Perry Cnty. v. Lindemann, 165 Ind. 186, 191, 73 N.E. 912, 914 (1905) (citing Sudbury v. Bd. of Comm'rs of Monroe Cnty., 157 Ind. 446, 456, 62 N.E. 45, 48–49 (1901)); *see also* State ex rel. Wadsworth v. Wright, 211 Ind. 41, 45, 5 N.E.2d 504, 505 (1937) ("There is no provision in the Constitution which expressly restrains the power of the Legislature to diminish the compensation of any [non-Article 7] officer."). Here, the provision of Article 4, Section 29, on its face, does restrain the legislature from *increasing* the compensation of its members "during the session at which such increase may be made," Ind. Const. art. 4, § 29, but it does not expressly restrain the legislature from *diminishing* members compensation for any reason. The constitutional provision of Article 4, Section 29, restraining the Legislature from increasing compensation, does not present a constitutional limitation on the power of each house to compel attendance and punish disorderly conduct of its members, by the collection of fines.

The plaintiffs further allege that the provisions of the Indiana Wage Payment Statutes act as a statutory limitation on the defendants' actions in collecting the legislative fines. Appellees' Br. at 34 ("Even if the Court were to determine that these fines were valid, the Defendants' method of collection violates Indiana law."). We disagree. To apply the provisions of the Indiana Wage Payment Statutes to the House of Representatives in this action would be to undermine the constitutional authority of the House over the imposition and enforcement of legislative disci-

---

[2] We note that the Court in Lindemann goes on to elaborate that "when the salary is earned the right thereto becomes vested, and cannot be taken away." Lindemann, 165 Ind. at 191, 73 N.E. at 914. However, the legislative fines at issue here were not deducted from salary, but rather from per diem. While we must tread lightly so as not to wade into the merits of the plaintiffs' claim, it is important to recognize the difference between legislative salary, compensation received for services, and per diem pay, reimbursement for legislative expenses. Although per diem pay may in fact be "fixed by law," it is not, by its very definition, "compensation for services," and therefore reduction, or increase for that matter, of per diem pay would not in any case run afoul of Article 4, Section 29.

11

pline and vest it in the courts, in contradiction of the separation of powers doctrine. This purported *statutory* limitation cannot serve as a means for the courts to consider challenges to legislative action to compel attendance and punish disorderly members where there exists no *constitutional* limitation on the House's express constitutional power to take such actions. *See* <u>Reeves</u>, 95 N.E.2d at 840 (finding that judicial enforcement of a statute granting the right to recount of votes for legislative office violated the Constitution's exclusive grant of authority to each respective house over elections, qualifications, and returns of members in Article 4, Section 10); *see also* <u>Masariu</u>, 621 N.E.2d at 1098 ("[T]o the extent [the Indiana Access to Public Records Law and the Indiana Open Door Law] empower the judicial branch to inquire into and interfere with the internal operations of the Indiana House of Representatives, said application transgresses the above separation of powers clause of our state constitution."). Thus, although the legislature has authorized the courts to enforce the Indiana Wage Payment Statutes, here, application to members of the House of Representatives would violate the separation of powers and is therefore constitutionally impermissible.

The plaintiffs in this case were disciplined for their nonattendance and resulting obstruction to the formation of a quorum necessary for conducting the regular business of the House of Representatives, a core legislative function. In fact, plaintiffs themselves declare that "[b]etween February 22, 2011, and March 27, 2011, the Democratic Representatives caucused each day in Illinois and engaged in activities related to their membership in the Indiana House of Representatives," Appellees' Br. at 6, and frame the act of quorum breaking as "a time-honored fulfillment of [legislative] obligations," *id.* at 23. Be that as it may, it is not within the constitutional authority of the courts to determine what constitutes proper discipline under Article 4, nor to limit the House of Representatives' enforcement of legislative discipline as it relates to this core legislative function. The issues are nonjusticiable, and, as a constitutional and prudential matter, it is improper for the judiciary branch to entertain consideration of the plaintiffs' requests for relief.

This is not to say that any or all disputes within a political branch of government fall outside the purview of the judicial authority. If House leadership attempted to discipline members for actions that were outside the "core legislative function," the courts could more readily take action. If the method of legislative discipline took the form of criminally punishable action, the

courts could certainly entertain criminal prosecution of the offenders. But the actions taken here were within the authority granted both in the Indiana Constitution and in the House Rules passed pursuant to constitutional authority. Thus, there is no constitutional basis on which the plaintiffs' claims are justiciable in Indiana courts.

The plaintiffs further contend that the Article 4 sections cited by the defendants do not apply "with respect to the per diem withheld during the Illinois caucus because those wages were not withheld as discipline." *Id.* at 16. The plaintiffs claim that the amounts were erroneously withheld because "Clerk Spotts mistakenly believed the legislature had recessed for five consecutive days and Auditor Berry refused to issue pay without Spotts' vouchers." *Id.* While the plaintiffs rightly identify a difference between per diem amounts withheld in satisfaction of the fines imposed as legislative discipline and per diem amounts unpaid due to the belief that the House had been in recess for five consecutive days, this difference is immaterial as it relates to a court's power to review the withholding of per diem. As we noted in <u>Masariu,</u>

> The Clerk of the Indiana House of Representatives is a patronage appointment chosen by the majority party in closed caucus and ratified by the full House in public session. Her duties are controlled totally by the leadership of the House, and she is answerable only to them for her actions in the performance of her duties. How those duties are performed, or any lack of performance of those duties, is an *internal matter* totally controlled by the House leadership.

<u>Masariu</u>, 621 N.E.2d at 1098 (emphasis added). Thus, whether the House was in recess for five consecutive days, whether Clerk Spotts was correct in her belief that it was, and whether a recess of five consecutive days triggers the provisions of Article 4, Section 11, of the Indiana Constitution, are all matters within the exclusive province of the legislature, and are unreviewable by the courts. We will not involve the courts in such inherently internal matters of the legislative branch.

**Conclusion**

Although courts in general have the power to determine disputes between citizens, even members of the Indiana General Assembly, we hold that where a particular function has been expressly delegated to the legislature by our Constitution without any express constitutional limitation or qualification, disputes arising in the exercise of such functions are inappropriate for ju-

dicial resolution. The case before us involves such nonjusticiable claims for relief on which the judicial branch must decline to pass judgment. The trial court erred in ruling on the merits of this dispute. Both the issuance and collection of fines as legislative discipline are functions constitutionally committed to the legislative branch without express limitation or qualification by our Constitution. We therefore reverse the judgment of the trial court, remand, and direct the trial court to grant the defendants' motion to dismiss for lack of justiciability.

David and Massa, JJ., concur

Rucker, J. dissents with separate opinion

Rush, J., concurs in part and dissents in part with both the majority and the dissent, with separate opinion.

**Rush, J., concurring in part and dissenting in part.**

I write separately because I see the narrow justiciability test articulated by the majority as entirely consistent with <u>Roeschlein v. Thomas</u>, 258 Ind. 16, 280 N.E.2d 581 (1972). I do not share Justice Rucker's concern that today's test "finds no support in our long standing case authority," is "one we have never adopted," or "abandons this Court's own authority on the question of when an issue is justiciable in favor of a test apparently endorsed in other jurisdictions." As <u>Roeschlein</u> states, legislative actions are non-justiciable if they are taken "pursuant to specific constitutional authority and *not contrary thereto*," 258 Ind. at 28, 280 N.E.2d at 589 (emphasis added) — that is, "not contrary to specific constitutional authority." I see no difference in this context between "specific constitutional authority," <u>id.</u>, and an "express constitutional limitation," slip op. at 9, for identifying the rare occasions when Article 3, Section 1 of our State Constitution allows us to review the Legislature's internal affairs. This standard is narrow enough to "effectively preclude review of almost any legislative act," but I see that limitation as an advantage, not a drawback — and, again, as consistent with <u>Roeschlein</u>. I therefore concur with the majority's statement of the justiciability test.

But I join the dissenting opinion in all other respects. As Justice Rucker observes, this case is not about the House's authority to *impose* these fines (which were a patently non-justiciable exercise of its Article 4, Section 14 power to discipline its members), but only whether it may *collect* the fines in this particular manner. On that point, I share his understanding of Article 4, Section 29 as an "express constitutional limitation" that makes this limited question justiciable. Accordingly, I would also reach the Wage Payment issue on its merits and resolve it as Justice Rucker does.

In sum, I concur in part in the majority opinion because I understand it to state the same justiciability test we have always followed. For that same reason, I cannot join in the opening paragraph, or first sentence of Part II, of Justice Rucker's dissent. But because I disagree with the majority's application of that test, I join the dissenting opinion in all other respects.

**Rucker, J., dissenting.**

As I understand the majority's position, this Court has the authority to decide the issue presented to us today, but for matters of "prudence" the Court declines to exercise that authority. And in determining whether prudence demands this Court should not intervene, the majority adopts a test that finds no support in our long standing case authority. That is, an "*express* constitutional *limitation*" on an otherwise constitutionally sanctioned legislative act. Slip op. at 10, 11 (emphasis added). In other words, according to the majority, so long as a particular constitutional provision permits the Legislature to take certain action, then the Court will not intervene unless *another* constitutional provision expressly limits the legislature from taking that action. We have never adopted such a test, which in my view would effectively preclude review of almost any legislative act. Instead this Court's jurisprudence teaches that an issue is nonjusticiable only when "[o]n its face [the Legislature] was acting pursuant to specific constitutional authority and not contrary thereto . . . ." Roeschlein v. Thomas, 280 N.E.2d 581, 589 (Ind. 1972) (holding that the legislature's recording of yeas and nays in its journal was within the exclusive province of the legislature and not subject to judicial examination); see also Ellingham v. Dye, 99 N.E. 1, 8 (Ind. 1912) (rejecting the argument that the general grant of legislative authority under Article 4 of the Indiana Constitution included the authority to draft an entirely new constitution in light of conflicting language in Article 16, which although it did not expressly limit the legislature's power in this regard, it did outline specific procedures for amending the constitution). Here, in my view, the Legislature appears to have been acting contrary to specific constitutional authority. And thus the issue before us does not support the "prudence" the majority invokes. Therefore I respectfully dissent.

## Discussion

### I.

This Court has long recognized restrictions on judicial intervention into exclusively legislative actions. See Ellingham, 99 N.E. at 21 (quoting McConaughy v. Secretary of State, 119 N.W. 408, 417 (Minn. 1909)) ("The courts have no judicial control over [whether the legislature will pass a law or submit a proposed constitutional amendment to the people], not

merely because [these are] political questions, but because they are matters which the people have by the Constitution delegated to the Legislature.") But we have nonetheless recognized the necessity of robust judicial oversight of all branches of government:

> [E]very officer under a constitutional government must act according to law and subject to its restrictions, and every departure therefrom or disregard thereof must subject him to the restraining and controlling power of the people, acting through the agency of the judiciary; for it must be remembered that the people act through the courts, as well as through the Executive or the Legislature. One department is just as representative as the other, and the judiciary is the department which is charged with the special duty of determining the limitations which the law places upon all official action. The recognition of this principle, unknown except in Great Britain and America, is necessary, to 'the end that the government may be one of laws and not of men'—words which Webster said were the greatest contained in any written constitutional document.

Id. at 22 (quoting McConaughy, 119 N.W. at 417). In fact, our cases recognize that "[j]udicial review of [ ] statutory and constitutional issues is fully in accord with the institutional expertise of the judiciary and the role that courts are expected to play in our constitutional system." Ind. High Sch. Athletic Ass'n v. Carlberg, 694 N.E.2d 222, 244 (Ind. 1997) (Dickson, J., concurring and dissenting) (quotation omitted). We have also declared "[w]hile this Court respects the separation of powers, we do not permit excessive formalism to prevent necessary judicial involvement. Where an actual controversy exists we will not shirk our duty to resolve it." Boehm v. Town of St. John, 675 N.E.2d 318, 322 (Ind. 1996) (alteration in original) (quoting Ind. Dep't of Envtl. Mgmt. v. Chem. Waste Mgmt., Inc., 643 N.E.2d 331, 337 (Ind. 1994)).

To begin, it is important to note this controversy is not about the ability of the Legislature to discipline its members, including the assessment of fines and penalties. "Either House may punish its members for disorderly behavior, and may, with the concurrence of two-thirds, expel a member; but not a second time for the same cause." Ind. Const. art. 4, § 14. Further, the Constitution provides that when a quorum is not present to do business: "a smaller number [of House members] may meet, adjourn from day to day, and compel the attendance of absent

2

members." Ind. Const. art. 4, § 11.[1] Instead, what is at stake is the ability of the Legislature to collect the fines it imposed by withholding wages and the per diem payments of some of its members to which those members are entitled.

There is specific Indiana constitutional authority addressing legislative pay. Article 4, Section 29 declares: "The members of the General Assembly *shall receive for their services a compensation to be fixed by law;* but no increase of compensation shall take effect during the session at which such increase may be made." Ind. Const. art. 4, § 29 (emphasis added). Under our longstanding and traditional approach in addressing issues of justiciability, the question before us is straightforward, namely: whether the majority caucus "on its face" was "acting . . . contrary" to this constitutional authority. It appears plain to me – without engaging in excessive formalism – that by reducing the compensation to which the minority caucus members were entitled, the majority caucus at the very least was acting "on its face" contrary to Article 4, Section 29. This is so because the phrase "fixed by law" must be given meaning. Article 4, Section 1 of the Indiana Constitution provides:

> The Legislative authority of the State shall be vested in the General Assembly, which shall consist of a Senate and a House of Representatives. The style of every law shall be: "Be it enacted by the General Assembly of the State of Indiana"; and *no law shall be enacted, except by bill.*

Ind. Const. art. 4, §1 (emphasis added). In interpreting Section 29's mandate, it appears to me that a legislator's compensation must be set by a bill enacted by the General Assembly, and not by a rule of one chamber. Thus the issue before us deserves full consideration by this Court and should not be avoided for an alleged lack of justiciability.

---

[1] Indeed the Legislative Bolting Statute – Indiana Code section 2-2.1-4-7 – provides in relevant part "a member who is absent from the member's chamber with the result that the member's body is unable to form a quorum commits the act of legislative bolting and is liable for a civil penalty." Indiana Code section 2-2.1-4-8 provides in relevant part that the Speaker of the House or the President Pro Tempore of the Senate is "entitled to . . . [a]n order imposing a civil penalty of one thousand dollars ($1,000) for each day the member has violated section 7 of this chapter."

## II.

In the case before us the majority abandons this Court's own authority on the question of when an issue is or is not justiciable in favor of a test apparently endorsed in other jurisdictions. I make two observations. First, if the Article 4, Section 29 directive that legislative compensation "shall . . . be fixed by law" does not in the majority's view provide an "express constitutional limitation" on the legislature's power to discipline its members by withholding compensation, I am hard pressed to discern what might so qualify. Second, the authority on which the majority relies actually supports the view that the issue before us passes the justiciability test.

For example, in State ex rel. James v. Reed, 364 So. 2d 303 (Ala. 1978) the question was whether the Alabama courts could properly consider a voter's challenge to the qualifications of a legislator who had been convicted of bribery. The Alabama Constitution provided in relevant part:

> Each house shall choose its own officers and shall judge of the election, returns, and qualifications of its members. . . . Each house shall have power to determine the rules of its proceedings and to punish its members and other persons, for contempt or disorderly behavior in its presence; to enforce obedience to its processes; to protect its members against violence, or offers of bribes or corrupt solicitation; and with the concurrence of two-thirds of the house, to expel a member, but not a second time for the same offense; and the two houses shall have all the powers necessary for the legislature of a free state.

Reed, 364 So. 2d at 306 n.1 (quoting Ala. Const. §§ 51, 53).  Seemingly contrary to this exclusive legislative power to judge the qualifications of its members was the following constitutional provision:

> No person convicted of embezzlement of the public money, bribery, perjury, or other infamous crime, shall be eligible to the legislature, or capable of holding any office of trust or profit in this state.

Id. at 306 (quoting Ala. Const. § 60).  The Alabama Supreme Court interpreted this language to be a "specific constitutional limitation on legislative authority."  Id.  When I compare the

language of Section 60 with our Section 29 language "[t]he members of the General Assembly shall receive for their services a compensation to be fixed by law; but no increase of compensation shall take effect during the session at which such increase may be made" I am unable to discern what makes one a "specific constitutional limitation on legislative authority" while the other is not. In my view, the difference is not in the nature of the limiting language, but rather in the label the respective courts have affixed to it. The Alabama Supreme Court found the issue before it justiciable in light of the language in Section 60 which in its view acted as a "specific constitutional limitation on legislative authority," whereas the majority here finds the issue nonjusticiable because Section 29 does not operate as an "express constitutional limitation or qualification" on that authority. Slip op. at 13-14.

The majority's other cases likewise fail to support its application of an "express constitutional limitation" rule. The holding in Birmingham-Jefferson Civic Center Authority v. City of Birmingham, 912 So. 2d 204 (Ala. 2005), is entirely consonant with our previous justiciability standard requiring the existence of contrary constitutional authority. In Birmingham, there simply was no such contrary authority in the Alabama Constitution, and on that basis the Alabama Supreme Court unsurprisingly distinguished the case from Reed. See id. at 217-18. And our own Court has previously upheld the principle enunciated in Commission on Ethics v. Hardy, 212 P.3d 1098 (Nev. 2009)—that a statute contrary to constitutionally-bestowed legislative authority is ineffective to remove that authority. See State ex rel. Acker v. Reeves, 95 N.E.2d 838, 839, 840 (Ind. 1951) (holding that a statute purporting to confer power on the courts to order recounts in state legislative elections was insufficient to do so in light of constitutional language providing that the legislative body had the sole power to judge the "election, qualifications and returns of its members").

Finally, to the extent Hardy and Brady v. Dean, 790 A.2d 428 (Vt. 2001), hold that discipline of legislators can be considered "a core legislative function," I do not disagree with this general proposition. But in this case, determining the compensation of legislators is not such a function. Rather, to the extent it is subsumed within the legislature's power to discipline its members, impose fines upon them, and compel their attendance it is, at least on its face, contrary to Article 4, Section 29 requiring that legislators shall be compensated as fixed by law.

5

## III.

Because I am convinced that Plaintiffs' claims are not precluded from judicial review I would consider them on the merits. I do so below.

Plaintiffs advance several State and Federal constitutional claims in support of their argument that they are entitled to a return of the wages already taken from them and an injunction prohibiting any such future conduct. However, it is unnecessary to determine whether the Indiana or Federal Constitutions afford Plaintiffs relief because they clearly have a statutory remedy, namely Defendants' violation of Indiana's Wage Payment Statute.

Title 22, Article 2, Chapter 5 of the Indiana Code (commonly referred to as the "Wage Payment Statute") governs the frequency and amount an employer must pay its employees. St. Vincent Hosp. & Health Ctr., Inc., v. Steele, 766 N.E.2d 699, 703 (Ind. 2002). The statute provides in pertinent part:

> Every person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee. The payment shall be made in lawful money of the United States, by negotiable check, draft, or money order, or by electronic transfer to the financial institution designated by the employee. Any contract in violation of this subsection is void.

I.C. § 22-2-5-1(a). In sum the Wage Payment Statute requires employers to "pay each employee at least semimonthly or biweekly, if requested, the *amount due* the employee." Id. (emphasis added). Section 2 of this chapter creates Plaintiffs' right of action to collect wages that are due along with liquidated damages. That section provides:

> Every such person, firm, corporation, limited liability company, or association who shall fail to make payment of wages to any such employee as provided in section 1 of this chapter shall, as liquidated damages for such failure, pay to such employee for each day that the amount due to him remains unpaid ten percent (10%)

6

> of the amount due to him in addition thereto, not exceeding double
> the amount of wages due, and said damages may be recovered in
> any court having jurisdiction of a suit to recover the amount due to
> such employee, and in any suit so brought to recover said wages or
> the liquidated damages for nonpayment thereof, or both, the court
> shall tax and assess as costs in said case a reasonable fee for the
> plaintiff's attorney or attorneys.

I.C. § 22-2-5-2. Cf. David A. Ryker Painting. Co. v. Nunamaker, 849 N.E.2d 1116, 1117 (Ind. 2006) (declining to adopt a "good faith defense" for an employer's failure to pay but declaring that plaintiff was not entitled to liquidated damages or attorney fees where defendant "did not fail to make a timely payment of the amount due to the plaintiff").

The Defendants first contend that the House orders directing that the fines be deducted from Plaintiffs' paychecks operate to supersede the Wage Payment Statute. See Br. of Appellants at 52-53. Defendants compare these orders to the Rules of Trial Procedure promulgated by this Court which our courts have expressly held take precedence over conflicting procedural statutes. See id. at 53 (citing Bowyer v. Ind. Dep't of Natural Res., 798 N.E.2d 912, 916 (Ind. Ct. App. 2003)). This comparison is inapposite. To the extent Defendants' violation of the wage payment statutes conflicts with their authority to impose fines by rule of the House, the wage payment statutes control. Cf. I.C. § 22-2-5-1(a) ("Any contract in violation of this subsection is void."). Defendants' assertion that the doctrine providing that a specific law controls a conflicting general law is similarly unavailing. An order of one caucus of the House of Representatives is simply not a law.

Defendants next contend that they are not governed by the explicit terms of the Wage Payment Statute, and that they do not have an employer-employee relationship with the Plaintiffs. Section 2 applies when a "person . . . shall fail to make payment of wages to [an] employee." I.C. § 22-2-5-2. The Wage Payment Statute provides no definition for the terms "employer" or "employee." These terms are defined to include the State in closely-related Chapters of the Code. See I.C. § 22-2-2-3 ("As used in this chapter . . . '[e]mployer' means . . . the state . . . ."); I.C. § 22-2-6-1(b) ("For the purpose of this chapter, the term 'employer' shall also include the state and any political subdivision of the state."). It is true, as Defendants point

7

out, that these sections specify that the definitions apply to the specific chapter in which they are used (Chapter 2 addresses "Minimum Wage" and Chapter 6 addresses "Wage Deductions").  But as Chapter 5 does not include any definition in this regard, it is reasonable to consider the definitions in closely-related chapters of the Code.  See, e.g., Gurnik v. Lee, 587 N.E.2d 706, 708-09 (Ind. Ct. App. 1992) (considering the definition of "wages" elsewhere in Article 2 when interpreting the term as used in the Wage Payment Statute).  Further, the word "person" is defined nowhere in the Wage Payment Statute, and though it is defined variously in many other chapters throughout the Code, where it is not contrarily defined the legislature has told us that the term "'[p]erson' extends to bodies politic and corporate."  I.C. § 1-1-4-5(17).  This is further evidence that the Wage Payment Statute applies to the Defendants.  See, e.g., Ind. State Highway Comm'n v. Rickert, 412 N.E.2d 269, 273-74 (Ind. Ct. App. 1980) (in construing another statute, concluding that the phrase "bodies politic" encompasses the State), vacated on other grounds by 425 N.E.2d 620 (Ind. 1981).

This conclusion is consistent with our analysis of the employer-employee relationship in other contexts.  In differentiating employees from independent contractors, we have referred to the United States Supreme Court's test in Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 751-52 (1989), see Conwell v. Gray Loon Outdoor Mktg. Grp., Inc., 906 N.E.2d 805, 815 (Ind. 2009), and the Restatement (Second) of Agency § 220, see Mortg. Consultants, Inc. v. Mahaney, 655 N.E.2d 493, 495-96 (Ind. 1995), to help determine whether an employer-employee relationship exists.  Defendants in the instant case do not argue the legislators are "independent contractors" but still contend that considering these factors, there is no employer-employee relationship between the State and the legislators.  See Br. of Appellants at 56-59 (noting that Plaintiffs are elected by the people and arguing they should be considered only "officers" of the State and the House does not exercise "control" over them).  To the extent the independent contractor-employee analysis applies in this case, legislators are clearly employees of the State.  The Internal Revenue Service requires employers to report wage and salary information for employees on Form W-2; and here the payments at issue are so reported. The State provides plaintiffs with certain benefits including offices and supplies; the legislators perform the core of their duties (voting on legislation) in the Statehouse, and enacting legislation

is part of the regular business of the State. See Cmty. for Creative Non-Violence, 490 U.S. at 751-52.

Finally, Defendants argue that to the extent the legislative fines were deducted from "per diem" payments due to the legislators, those "per diem" payments are not "wages" and thus any failure to pay those amounts does not violate the Wage Payment Statute. The Indiana Code chapter governing compensation of legislators, I.C. § 2-3-1 *et seq.*, provides that in addition to a salary for their legislative services, legislators shall receive a "per diem and such other expense reimbursements as may be provided by law" "[i]n order to reimburse the members of the general assembly for the expenses they incur in providing legislative services." I.C. § 2-3-1-4. The per diem does not vary with the amount of expenses incurred by the legislators, but rather is fixed at $152.00 per day while the legislature is in session and $60.80 per day when the legislature is not in session. See Br. of Appellants at 62.

Our courts have repeatedly recognized that "[f]or purposes of the Wage Payment Statute, wages are defined as 'all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other method of calculating such amount.'" Quezare v. Byrider Fin., Inc., 941 N.E.2d 510, 513 (Ind. Ct. App. 2011) (quoting I.C. § 22-2-9-1(b); citing Highhouse v. Midwest Orthopedic Inst., P.C., 807 N.E.2d 737, 739 (Ind. 2004), trans. denied). Further, "[i]n determining whether a method of compensation constitutes wages for purposes of the Wage Payment Statute, the name given to the method of compensation is not controlling; instead, we consider the substance of the compensation to determine whether it is a wage." Id. at 514 (citations omitted). We have held that payment denominated "bonus" is a wage "if it is compensation for time worked and is not linked to a contingency such as the financial success of the company." Highhouse, 807 N.E.2d at 740 (quoting Pyle v. Nat'l Wine & Spirits Corp., 637 N.E.2d 1298, 1300 (Ind. Ct. App. 1994)).

The per diems at issue here are fixed in amount, are tied directly to the days worked by the legislators, vary with the duties performed (in session versus out of session), and do not change with respect to the amount of expenses actually incurred by the legislators. Thus, the per

9

diem paid to legislators qualifies as an "amount[ ] at which the labor or service rendered is recompensed" and is not linked to a contingency such as the expenses incurred by the legislators.

## Conclusion

In sum, I would hold that Indiana's Wage Payment Statute applies squarely to these facts. The House's constitutionally-granted Legislative discretion to punish its members does not include the discretion to reduce its members' compensation. Defendants' actions are in direct conflict with Article 4, Section 29 of the Indiana Constitution. Hence, I would hold Plaintiffs' wage payment claims justiciable and I would affirm the trial court's order to the extent it finds Defendants violated Indiana Code section 22-2-5-1.

Rush, J., concurs in part and dissents in part with separate opinion.